## THE JOHN FLEMING.

### (District Court, S. D. New York. March 31, 1905.)

COLLISION—STEAM VESSELS CROSSING—VIOLATION OF STARBOARD HAND RULE.
    A tug *held* solely in fault for a collision with a crossing ferryboat in Hell Gate for failing to keep her course and speed as the privileged vessel, after they had arranged by signal to pass in accordance with the starboard hand rule.

In Admiralty. Suit for collision.

James J. Macklin, for libellant.
Albert A. Wray, for claimant.

ADAMS, District Judge. This action was brought by the New York and East River Ferry Company, the owner of the ferryboat Haarlem, against the steamtug John Fleming, owned by the Brown & Fleming Contracting Company, to recover the damages caused to the former by a collision between the vessels, which occurred in Hell Gate between Little Mill Rock and Horn's Hook on the 2nd day of April, 1904, about 12:30 o'clock P. M.

It appears that the Haarlem was bound from her Manhattan slip, at 92nd Street, to Astoria, and the Fleming was bound from the east side of Blackwells Island to 95th Street, Manhattan. The tide was the strength of the ebb and the current was running at the rate of about 7 miles. The weather was clear.

The Fleming kept along the Astoria shore, intending to pass to the southward and westward of Little Mill Rock. When she saw the Haarlem coming across, she blew a signal of one whistle, to which the Haarlem replied with a signal of one. Both sides argue the case on the theory of its being governed by the starboard hand rule, which required the Fleming to keep her course and speed and the Haarlem to avoid her.

The testimony is quite voluminous, and is conflicting on many of the points involved. The place of collision, for example, is the subject of diverse contentions, it being stated by the Haarlem's witnesses, that it occurred about half way between Little Mill Rock and Horn's Hook, while those on the Fleming place it very much nearer Little Mill Rock and somewhat nearer the Astoria shore. It is not very important, however, to decide this, or other minor controversies. The question is whether the vessels complied with the course agreed upon.

The Haarlem was navigating to pass to the southward and westward of the Fleming and apparently did what was necessary to ac-

complish that result, provided the Fleming kept her course and speed. The latter, however, did not keep her course but sheered to port, ten points, it is contended by the Haarlem, and two points, it is admitted by the Fleming. It appears that the latter was proceeding at full speed but when she struck the strong tide, she slowed to enable her to more easily throw her helm to port to meet its effects. It is urged, and there is testimony to support the claim, that the best way for the Fleming to do this was to lessen her headway temporarily, with the necessary consequence of being somewhat affected by the tide and driven slightly to port. It is further urged on her behalf, that the Haarlem should have known the necessity for such manœuvre and arranged her own navigation accordingly. The difficulty is that the sheer to port of the Fleming was, in accordance with the preponderance of the proof, much greater than could in any way have been expected by the Haarlem, even if she was bound to know that there would necessarily be some deviation on the part of the Fleming by reason of the tide. In all probability, the Fleming failed to take timely measures to meet and overcome the effects of the tide when she left the slack water on the Astoria shore and was thus driven considerably out of her course and into that of the Haarlem, which was properly arranged as required by the governing rule. It is well established by the testimony, that if the wheel of a vessel under such circumstances as the Fleming was navigating in, is not ported in time, the natural and inevitable consequence is just such a sheer to port as the witnesses say they saw her take here.

It appears that the boats came together port to port, indicating that the Fleming was further up the river than the Haarlem and forced down by the tide. This fact also seems to substantiate the Haarlem's claim that she gave the Fleming ample margin to pursue her course in conformity with the rule.

I conclude that the Fleming was solely in fault and there will be a decree for the libellant, with an order of reference.